## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

JOHN HARRIS, JR.,        :
        :
    Plaintiff        :    No. 4:11-CV-00556
        :
    vs.        :    (Judge Nealon)
        :
MICHAEL J. ASTRUE,        :
COMMISSIONER OF SOCIAL        :
SECURITY,        :
        :
    Defendant        :

*FILED*
*SCRANTON*
*MAY 2 5 2012*
*PER*
*DEPUTY CLERK*

## MEMORANDUM

## BACKGROUND

The above-captioned action is one seeking review of a decision of the Commissioner of

Social Security ("Commissioner") denying Plaintiff John Harris, Jr.'s claim for social security

supplemental security income benefits.

Supplemental security income is a federal income supplement program funded by general

tax revenues (not social security taxes).  It is designed to help aged, blind or other disabled

individuals who have little or no income.

Harris protectively filed[1] his application for supplemental security income benefits on

March 9, 2009. Tr. 46, 89 and 102.[2]  The application was initially denied by the Bureau of

---

1. Protective filing is a term for the first time an individual contacts the Social Security
Administration to file a claim for benefits.  A protective filing date allows an individual to have
an earlier application date than the date the application is actually signed.

2. References to "Tr._" are to pages of the administrative record filed by the Defendant as part of
his Answer on June 2, 2011.

Disability Determination on July 9, 2009.[3]  Tr. 47-51.  On August 10, 2009, Harris requested a

hearing before an administrative law judge.  Tr. 54.  After about 6 months had passed, a hearing

was held before an administrative law judge on February 3, 2010.  Tr. 25-44.  On February 16,

2010, the administrative law judge issued a decision denying Harris's application.  Tr. 111-21.  On

March 23, 2010, Harris filed a request for review with the Appeals Council and, on January 28,

2011, the Appeals Council concluded that there was no basis upon which to grant Harris's request

for review.  Tr. 1-7.  Thus, the administrative law judge's decision stood as the final decision of the

Commissioner.

Harris then filed a complaint in this court on March 24, 2011.  Supporting and opposing

briefs were submitted and the appeal[4] became ripe for disposition on August 29, 2011, when

Harris filed a reply brief.

Harris was born in the United States on October 29, 1971.  Tr. 90.  The record is unclear as

to the extent of Harris's education.  One document indicates that Harris withdrew from school after

completing the 10th grade. Tr. 113. Harris testified at the administrative hearing that he withdrew

from school after attending the 5th grade. Tr. 29.  Intelligence testing in January, 2008, revealed

that Harris was functioning at the 3.3 grade level with respect to reading, the 3.6 grade level with

respect to math, and the 2.5 grade level with respect to written language. Tr. 165. The testing also

revealed that Harris had a Full Scale I.Q. of 69 and a Verbal and Performance I.Q. of 72.  Harris's

---

3. The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.  Tr. 47.

4. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

educational records are not contained within the administrative record. The administrative law judge did not take steps to clarify or further develop the record regarding the extent of Harris's education.

The record reveals that Harris had significant difficulty during his formative years. He was hospitalized in a psychiatric facility before he was nine years old after setting his mother's house on fire; he set fields on fire; and he was arrested multiple times for breaking and entering, stealing, fighting, and running away. 162-175. He lived in foster homes and juvenile detention centers. Id. At eighteen he was playing with a gun that discharged resulting in the death of his nephew. Id. Harris was charged with and convicted of third degree murder in or about 1991 as a result of the death of his nephew and was incarcerated for approximately ten years. Id. He was also incarcerated from 2004 to 2007 for assaulting a police officer. Id. Records of any medical or mental health treatment or educational or vocational training received while incarcerated are absent from the administrative record.

The record reveals that Harris received supplemental security income benefits as a child based on a disability onset date of August 20, 1985. Tr. 11. Harris's supplemental security income benefits ended in 1991 when he was incarcerated. Id.

Although Harris has worked in the past, none of his work amounted to substantial gainful activity. Tr. 19. A vocational expert testified that Harris had worked as a cook (semiskilled, medium work[5]), landscaper (unskilled, medium to heavy work), a maintenance person (unskilled,

---

5. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

light work), a painter (semiskilled, medium work), and a sandwich maker/fast food cook

_____

(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) *Medium work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) *Heavy work.* Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. § 416.967.

(semiskilled, light work). Tr. 41-42.  It appears that Harris's last employment was in March, 2008, as a sandwich maker at a McDonald's. Tr. 30 and 107.

Records of the Social Security Administration reveal that Harris had minimal earnings in the years 1989 ($555.62), 1990 ($230.00), 1998 ($1637.62), 2001 ($3193.38), 2002 ($5245.60), 2003 ($5147.20), 2004 ($254.45), 2008 ($4512.76) and 2009 ($723.00). Tr. 97 and 99.  Harris's total earnings during those years were $21,499.63. Id.

Harris claims that he is disabled primarily because of mental impairments. Tr. 90-93 and 106.[6] He identified anxiety, attention deficit hyperactivity disorder, bipolar disorder, anger disorder, depression, schizoaffective disorder,[7] posttraumatic stress disorder, and decreased memory and concentration as his mental health impairments. Tr. 106, 161, 165, 173, 178-195, 205-31, 240 and 242.  Harris stated that he has difficulty remembering things, he is easily distracted, he feels stressed and depressed, and he has problems reading and writing. Tr. 106. Harris contends that his disability onset date was January 1, 1985. Id.

Harris's alleged disability onset date of January 1, 1985, has no impact on Harris's application for supplemental security income benefits because supplemental security income is a

---

6. Harris also suffered a gunshot wound to the left upper arm in 2004 when he was assaulting a police officer.  The record does not substantiate any ongoing work-related physical functional limitations as a result of that injury.

7. "Schizoaffective disorder is a mental condition that causes both loss of contact with reality (psychosis) and mood problems. . . . The exact cause of schizoaffective disorder is unknown. Changes in genes and chemicals in the brain (neurotransmitters) may play a role.  Some experts do not believe it is a separate disorder from schizophrenia." Schizoaffective disorder, A.D.A.M. Encyclopedia, PubMed Health, U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001927/ (Last accessed May 22, 2012).

needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." See C.F.R. § 416.501.  As stated above Harris protectively filed his application on March 9, 2009. Consequently, Harris is not eligible for SSI benefits for any period prior to April 1, 2009.

For the reasons set forth below we will remand the case to the Commissioner for further proceedings.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner.  See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe

v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001);

Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but

'rather such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v.

N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198,

200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence

has been described as more than a mere scintilla of evidence but less than a preponderance.

Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620

(1966).

Substantial evidence exists only "in relationship to all the other evidence in the record,"

Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its

weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of

evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails

to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must

indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting

certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court

reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v.

Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

Another critical requirement is that the Commissioner adequately develop the record. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)("The ALJ has an obligation to develop the record in light of the non-adversarial nature of benefits proceedings, regardless of whether the claimant is represented by counsel."); Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); Fraction v. Bowen, 787 F.2d 451, 454 (8th Cir. 1986); Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001); Smith v. Apfel, 231 F.3d 433. 437 (7th Cir. 2000);  see also Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 2085 (2000)("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]").  If the record is not adequately developed, remand for further proceedings is appropriate. Id.

## SEQUENTIAL EVALUATION PROCESS

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

8

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims. See 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[8] (2) has an impairment that is severe or a combination of impairments that is severe,[9] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[10] (4) has the residual functional capacity to return to his or her past work and (5) if

---

8. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 416.910.

9. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 416.945(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 416.945(c).

10. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[11]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

## MEDICAL RECORDS AND OTHER EVIDENCE

Before we address the administrative law judge's decision and the arguments of counsel, we will review some of Harris's medical records and a statement provided by Harris's mother, which the administrative law judge did not address in her decision.

Intelligence testing on January 22, 2008, by Jerry Miller, M.A., and Philip Hatfield, Ph.D., revealed Harris's limited intellectual ability. Tr. 162-166. As noted above, Harris's full scale I.Q. was 69. Tr. 165. Dr. Hatfield and Mr. Miller reported that the results placed Harris in the upper mild range of mental retardation. Tr. 164. They noted that Harris's language use, environmental accommodation, money management, and daily decision-making "suggest" he "may very well" be

---

11. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

capable of functioning "primarily in the borderline range of intelligence" but also reported that Harris evidenced weakness in social judgment, limited ability to complete numeric reasoning, and slow and methodical psychomotor speed. Tr. 164.

Medical sources, including Mark Hite, Ed.D., a state agency psychologist, concluded that Harris suffered from multiple impairments. Tr. 179-195. Those impairments were bipolar disorder, antisocial personality disorder, posttraumatic stress disorder, schizoaffective disorder, attention deficit hyperactivity disorder, borderline intellectual functioning, and major depressive disorder. Tr. 161, 165, 173, 178-195, 205-231, 240 and 242. Harris received medication and psychotherapy treatment for his mental impairments.

On May 26, 2009, Harris was examined by Karen, A. Saporito, Ph.D., on behalf of the Bureau of Disability Determination. Tr. 167-175. Dr. Saporito found that Harris suffered from schizoaffective disorder, attention deficit hyperactivity disorder by history, posttraumatic stress disorder, marijuana dependence in full remission and hallucinogen dependence. Tr. 173. Dr. Saporito could not rule out that Harris suffered from a learning disorder and mild mental retardation. Id.

Dr. Saporito concluded, *inter alia*, that Harris had moderate limitations with respect to his ability to interact appropriately with the public, extreme limitation with respect to his ability to interact appropriately with supervisors, marked limitations with respect to his ability to interact appropriately with co-workers, extreme limitations with respect to his ability to respond

11

appropriately to work pressure in a usual work setting, and marked limitations in his ability to

respond appropriately to changes in a routine work setting. Tr. 174-175.

On June 30, 2009, Priya Swamy, M.D., a specialist in pain medicine and physical and

rehabilitation medicine,[12] examined Harris on behalf of the Bureau of Disability Determination. Tr.

177-178. After examining Harris, Dr. Swamy's conclusion was as follows:

> I think this patient has some moderate pain in his
> left arm. I am unable to really distinguish where the
> [origin] of the pain is as it seems to be somewhat
> diffuse across the arm. He does not have any
> significant strength deficits on obvious motor exam
> though he is much stronger than I am. I believe he
> can lift weights under 25 pounds although I am not
> sure if he is able to do this regularly. However, I
> think he has significant depression and bipolar disorder
> which may be a contributing factor for him in terms of
> holding a job. I also think his low level of education
> would prevent him from doing any type of sedentary work
> which likely would not be a problem physically, I
> believe he is likely disabled because of his psychiatric
> issues rather than his physical issues.

Tr. 178.

Also, on June 30, 2009, Dr. Hite, the state agency psychologist, concluded based on a

medical records review that Harris's mental impairments did not meet or equal the criteria of a

listed impairment. Tr. 179 and 193. He further found that Harris's daily activities and functioning

were better than what the IQ scores represented. Tr. 194. Dr. Hite concluded that Harris could

---

12. An internet search revealed that Dr. Swamy is Board Certified in Pain Medicine and also
Board Certified in Physical Medicine and Rehabilitation.

perform simple, routine work. Tr. 191 and 194. Furthermore, Dr. Hite indicated that Dr. Saporito's opinion overestimated the severity of Harris's functional restrictions, relied heavily on Harris's subjective report of symptoms and limitations, was internally inconsistent and was inconsistent with the totality of the evidence. Tr. 194-195. Dr. Hite concluded that great weight could not be given to Dr. Saporito's opinion. Id.

Kevin Stockton, M.D., a psychiatrist at the Crozer Chester Medical Center, gave Harris a Global Assessment of Functioning (GAF) score of 50[13] in May and August, 2009. Tr. 149 and 206-207. Maya Patel, M.D., a psychiatrist at the Crozer Chester Medical Center, gave Harris a GAF score of 50 in November, 2009. Tr. 205 and 219. A mental status examination of Harris by Dr. Patel on November 12, 2009, revealed that Harris's mood was depressed, anxious, angry and labile, and his affect was constricted. Tr. 219. The treatment plans for this time frame reveal that despite treatment Harris continued to experience mood swings. Tr. 205-207.

One of the treating psychiatrists, Vidyasagar R. Gurijala, M.D., in December, 2009, indicated that Harris was incapacitated as the result of major depressive disorder, recurrent. Tr. 240. Dr. Gurijala reported that Harris's functional limitation were poor energy level, poor

---

13. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id.

concentration and impaired social relationships. Id. Dr. Gurijala stated that Harris has a long history of depression, bipolar disorder and anxiety disorder of a chronic nature. Tr. 239. He further noted that Harris's depression was characterized by lability, mood swings, hopelessness, helplessness and occasional thoughts of suicide. Id.

In January, 2010, Harris's psychotherapist, Joe Francisco, gave Harris a GAF score of 45 and opined that Harris had extreme limitations in all functional areas. Tr. 242-247.

On April 13, 2009, Ella Wilson, Harris's mother, completed and submitted to the Social Security Administration a statement regarding Harris's functional abilities. Tr. 128-135. She observed that Harris stays depressed a lot, he has problems sleeping, he forgets to take his medications, he can pay attention only for a little while, he does not follow written instructions well, and he needs oral instruction "really explain[ed]." Id. She also identified that Harris has problems with his memory, concentration, completing tasks, understanding, and getting along with others. Tr. 133. She wrote that he does not get along with authority figures or handle stress well, and thinks people are out to get him. Tr. 134.

**Discussion**

The administrative law judge went through each step of the sequential evaluation process and (1) found that Harris had not engaged in substantial gainful activity since March 9, 2009, the application date; (2) found that Harris had the severe impairments of "residuals status post left humerus fracture; a bipolar disorder, and borderline intellectual functioning;" (3) found that Harris had a history of polysubstance dependence but that that condition was in remission and not a

14

severe impairment; (4) found that Harris had a limited education; (5) found that Harris had

moderate difficulties with regard to concentration, persistence and pace; (6) found that Harris's

impairments did not meet or equal a listed impairment; (7) found that Harris lacked credibility; (8)

rejected the opinions Dr. Saporito and the opinions of Harris's treating psychiatrists and

psychotherapist; and (9) concluded that Harris had no past relevant work but that he could perform

a limited range of light work. Tr. 13-19.  Specifically, the administrative law judge stated that

Harris could engage in light work

> which requires maximum lifting of twenty pounds and
> frequent lifting of ten pounds; he can sit up to six
> hours, and stand and walk for up to six hours in an
> eight hour work day (20 C.F.R. § 416.967). He is
> limited to routine repetitive tasks, secondary to
> moderate limitations in attention and memory. He can
> have no more than occasional interaction with
> supervisors, coworkers, and the general public.

Tr. 17.  In so finding the administrative law judge stated that she gave "little weight" to the opinion

of Dr. Saporito and "[g]reater weight" to the opinion of Dr. Hite. Tr. 19

The administrative law judge at the administrative hearing asked the vocational expert to

assume a "person of the same age, education,[14] and background as" Harris "who is limited to work

at the light exertional level; secondary to moderate limitation in attention and memory; is limited

to routine, repetitive task; with occasional interaction with coworkers, supervisors, or the general

---

14. Neither the ALJ nor the vocational expert specified Harris's educational level.

public." Tr. 42. The hypothetical did not include a moderate limitation in pace. Based on this hypothetical question the vocational expert identified the jobs of laundry sorter and packer and that there were significant numbers of such jobs in the regional and national economies. Id.

In her decision, the administrative law judge at step five of the sequential evaluation process, concluded, based on a residual functional capacity of a limited range of light work as described above and the testimony of the vocational expert, that Harris was not disabled because he could perform work as a laundry sorter and packer, and that there were a significant number of such jobs in the regional and national economies. Tr. 20 and 42.

The administrative record in this case is 248 pages in length and the court has thoroughly reviewed that record. Harris argues, *inter alia*, that the administrative law judge erred when she failed to address all medical impairments established by the record and failed to address the statement from Harris's mother.

The Social Security regulations contemplate the administrative law judge considering whether there are any medically determinable impairments and then, when setting a claimant's residual functional capacity, considering the symptoms of both medically determinable severe and non-severe impairments. 20 C.F.R. § 404.1529. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limit the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe

impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two. However, all of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity. The social security regulations mandate such consideration and this court has repeatedly so indicated. See, e.g., Christenson v. Astrue, Civil No. 10-1192, slip op. at 12 (M.D. Pa. May 18, 2011)(Muir, J.); Little v. Astrue, Civil No. 10-1626, slip op. at 19-21 (M.D.Pa. September 14, 2011)(Kosik, J.); Crayton v. Astrue, Civil No. 10-1265, slip op. at 32-35 (M.D.Pa. September 27, 2011)(Caputo, J.); Hughes v. Astrue, Civil No. 10-2574 *29-30 (M.D.Pa. Mar. 12, 2012)(Nealon, J.); 20 C.F.R. §§ 416.923 and 416.945(a)(2).

The record indicates that in addition to bipolar disorder, borderline intellectual functioning and polysubstance dependence disorder that was in remission, Harris was diagnosed with posttraumatic stress disorder, schizoaffective disorder, attention deficit hyperactivity disorder and recurrent major depressive disorder. The failure of the administrative law judge to find those conditions as medically determinable impairments, or to give an adequate explanation for discounting them, makes her decisions at steps two and four of the sequential evaluation process defective.

The error at step two of the sequential evaluation process draws into question the administrative law judge's residual functional capacity determination and assessment of the credibility of Harris. The administrative law judge found that Harris's assertions that his

17

impairments prevented him from working were not credible.  This determination by the administrative law judge was based on an incomplete and faulty analysis of all of Harris's medically determinable impairments.  The error at step two is a sufficient basis to remand this case to the Commissioner for further proceedings.  However, there are several other errors that support such a remand, including the failure of the administrative law judge to consider and comment on the statement from Harris's mother.

Although Harris's mother did not testify at the administrative hearing in this case, the form that she completed was presented to the administrative law judge and is included in the administrative record.  The Commissioner encourages claimant's to submit such statements.  See, e.g, 20 C.F.R. §§ 416.912(b)(3), 416.913(d)(4), and 416.929(a).  The administrative law judge failed to address the mother's statement.  An administrative law judge is required to consider and explain why he or she is rejecting all of the non-medical evidence supporting the credibility of a claimant when making a negative credibility determination about the claimant.  See Burnett v. Comm'r of SSA, 220 F.3d 112, 122 (3d Cir. 2000) (holding that in making a credibility determination regarding claimant by rejecting the testimony regarding pain and other subjective symptoms, the administrative law judge erred by not mentioning the written statement of claimant's husband and the oral testimony of claimant's neighbor); Zurich v. Astrue, 2008 U.S. Dist. LEXIS 72781, *20 (M.D. Pa. Sept. 23, 2008)(Munley, J.)(remanded, in part, because the administrative law judge failed to consider a disability function report completed by the claimant's

18

sister); <u>Perez v. Astrue</u>, Civil No. 10-1167 *11 (M.D. Pa. May 27, 2011)(Muir, J.)(remanded

because ALJ failed to consider two witness statements).

There may be instances where the failure of an administrative law judge to consider witness

statement amounts to harmless error. <u>See</u> <u>Boyd v. Astrue</u>, Civil No. 11-600 *25-26 (M.D.Pa May

10, 2012)(Munley, J.). This is not one of those cases. In light of the opinion of Dr. Saporito and

the opinions of Harris's treating psychiatrists and psychotherapist we cannot conclude that the

administrative law judge's failure to address the statement of Harris's mother was harmless error.

The record was ambiguous as to Harris's educational attainment. The administrative law

judge found that Harris had a limited education. The term "limited education" is specifically

defined in the regulations of the Social Security Administration as follows:

> Limited education means ability in reasoning,
> arithmetic, and language skills, but not enough to
> allow a person with these educational qualifications
> to do most of the more complex job duties needed in
> semi-skilled or skilled jobs. We generally consider
> that a 7th grade through the 11th grade level of formal
> education is a limited education.

20 C.F.R. § 416.964(b)(3). The regulation also contain the terms "marginal education" and

"illiteracy." "Marginal education" is defined as the "ability in reasoning, arithmetic, and language

skills which are needed to do simple, unskilled types of jobs. We generally consider that formal

schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 416.964(b)(2).

"Illiteracy" is defined as "the inability to read or write. We consider someone illiterate if the

person cannot read or write a simple message such as instructions or inventory lists even though

the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 416.964(b)(1). In light of Harris's testimony that he withdrew from school after completing the 5th grade and the intelligence testing which indicated that Harris had a Full Scale I.Q. of 69 and was functioning at the 3.3 grade level with respect to reading, the 3.6 grade level with respect to math, and the 2.5 grade level with respect to written language, there was insufficient evidence for the administrative law judge to conclude that he had a limited education.

The administrative law judge when questioning the vocational expert did not specify Harris's education attainment. Tr. 40-43. Moreover, when the vocational expert testified, he did not identify the educational attainment of Harris. Id. Consequently, the testimony of the vocational expert regarding the jobs Harris can perform cannot be found to be substantial evidence of Harris's ability to perform those jobs.

Another defect in the administrative proceedings, as argued by Harris's counsel, is the ALJ's failure to include in the hypothetical question to the vocational a limitation regarding Harris's moderate limitation in pace. The administrative law judge in her decision found that Harris had a moderate limitation in concentration, attention and pace. However, she did not include "pace" in the question to the vocational expert. The Court of Appeals for the Third has held that if an administrative law judge poses a hypothetical question to a vocational expert that fails to reflect all of the applicant's impairments that are supported by the record, the vocational expert's opinion cannot be considered substantial evidence. Ramirez v. Barnhart, 373 F.3d 546, 552-553 (3d Cir. 2004); see also Corona v. Barnhart, 431 F.Supp. 2d 506, 516 (E.D. Pa.

20

2006)("the ALJ's determination that Plaintiff suffers mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration is not properly reflected in her hypothetical question to the VE."); Warfle v. Astrue, Civil No. 10-1255, slip op. at 20 (M.D. Pa. May 5, 2011)(Muir, J.)("It is incumbent on the administrative law judge to include in a hypothetical question all the limitations that are supported by the records.").

The administrative law judge, at step three of the sequential evaluation process, concluded that Harris had moderate limitations in concentration, persistence and pace but failed to incorporate the "pace" limitation into the hypothetical question. Although the administrative law judge limited Harris to unskilled work, this does not adequately reflect a limitation in pace. Id.[15] There are clearly many unskilled jobs that require an employee to maintain pace. There is no evidence in the record from the vocational expert that a moderate limitation in pace would not impact Harris's ability to maintain employment as a laundry sorter or packer.[16]

---

15. See also O'Connor-Spinner v. Astrue, __F.3d__, No. 09-4083 (7th Cir. Nov. 29, 2010)("[T]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do task of a given complexity.").

16. It is also important to mention that at step five of the sequential evaluation process the burden is on the Commissioner to produce evidence demonstrating that other work exists in significant numbers in the national economy that the applicant can perform. 20 C.F.R. §§ 416.912 and 416.960(c). We can only speculate as to the impact of a moderate limitation in pace would have on the number of jobs remaining, i.e., the erosion of jobs, if that limitation was included in the hypothetical question to the vocational expert.

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings.

An appropriate order will be entered.


**United States District Judge**


Dated: May 25, 2012